**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PATRICIA W.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

Case No. 2:22-cv-439

Bowman, M.J.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Patricia W. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error, all which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I. Summary of Administrative Record**

On October 17, 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging she became disabled on September 27, 2013, based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a telephonic hearing held on May 21, 2020, Plaintiff appeared with counsel and gave testimony before ALJ

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Joanna Papazekos. Vocational Expert Nancy Shapero also appeared by telephone. A supplemental telephonic hearing was held on September 1, 2020, wherein Plaintiff appeared with counsel. The ALJ also heard testimony from Paul Dhiman, M.D. an impartial medical expert an Mary Beth Kopar, a vocational expert. On November 30, 2020, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 10-25). [2]

Plaintiff was born on January 2, 1968 and was 45 years old on her alleged onset date of disability. She has a twelfth-grade education and past relevant work as a cashier/checker. (Tr. 23). Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "depression, somatoform disorder, hypertension, obesity, osteoarthritis, degenerative disc disease, COPD." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

- Sitting is limited to no more than 6 hours total in an 8-hour day;
- Standing is limited to no more than 30 minutes at a time, and no more than

---

[2] Since Plaintiff received an unfavorable ALJ decision in a prior disability claim in April 2016, the ALJ considered the RFC finding set forth in that prior decision pursuant to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and Acquiescence Ruling (AR) 98-4(6) (Tr. 10-11, 17). Notably, In *Drummond,* the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances" 126 F.3d at 842. In response to *Drummond,* the agency issued AR 98-4(6), which incorporates the Court's holding. AR 98-4(6) explains that, under *Drummond*, "[w]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings . . . ." Id. (emphasis added). Here, the ALJ found that new and material evidence warranted a greater degree of functional limitation than previously found by the prior ALJ (Id.). Thus, the ALJ did not formally adopt in their entirety the prior findings from the prior ALJ's decision (Id.).

> 2 hours total in an 8-hour day;
> - Walking is limited to no more than 30 minutes at a time, and nor more than 2 hours total in an 8-hour day;
> - Navigation of steps and ramps is limited to no more than occasionally;
> - No climbing of ropes, scaffolds, ladders;
> - Overhead work is limited to no more than frequently;
> - No concentrated exposure to extremes of cold, hear, wetness, humidity and pulmonary irritants such as gasses, fumes, dust and odors;
> - No exposure to workplace hazards defined as: no exposure to open flames, no exposure to inherently dangerous moving or mechanical parts that are closer than an arm's length from the individual, and no exposure to unprotected heights;
> - Work should be confined to noncomplex, routine, and repetitive tasks on a sustained basis;
> - No more than occasional and cursory interactions with the public;
> - No more than occasional interactions with supervisors and co-workers;
> - Work should be performed in a stable work environment where the workplace remains generally the same from day to day;
> - Absences no more than 1 time per month;
> - Off task 5-10% of the workday.

(Tr. 16).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform her prior work, but could perform other jobs that exist in significant numbers in the national economy, including order caller, marker, and electric worker. (Tr. 24). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) not providing a summary of Plaintiff's testimony for the benefit of the medical expert who was not present to hear Plaintiff's testimony; (2) failing to properly accommodate Plaintiff's vertigo and edema in her RFC; and (3) failing to find Plaintiff's dizziness and vertigo to be a severe impairment at Step Two of the Sequential Evaluation. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

I. Analysis

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

4

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Failure to Provide a Summary of Plaintiff's Testimony to the Medical Expert*

Plaintiff first argues that the ALJ erred by not providing a summary of Plaintiff's testimony to medical expert Dr. Dhiman, who was not present to hear Plaintiff's testimony. Notably, on September 10, 2020, the ALJ held a supplemental hearing to hear the testimony of medical expert, Dr. Nitin Dhiman. (Tr. 40). Plaintiff did not tesifty at this supplemental hearing.

Because the medical expert was not present at the initial hearing, Plaintiff argues the ALJ should have provided him with a summary of the prior hearing's testimony or should have given the Plaintiff the opportunity to testify, prior to giving his opinion regarding her limitations. Specifically, Plaintiff argues that the ALJ failed to comply with the guidelines in the Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-6-70(B) (Id.). Thus, according to Plaintiff, this was an error on the ALJ's part and resulted in a residual functional capacity determination that is unsupported by substantial evidence.

The HALLEX "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council, and Civil Actions Levels." HALLEX I-1-0-1. Section 1-2-6-70 of the HALLEX addresses the testimony of a medical expert (ME) during an ALJ hearing. Plaintiff relies on paragraph (B) of the section, which states: The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record. If additional medical evidence is received at the

6

hearing, the ALJ will provide it to the ME for review before the ME testifies. HALLEX I-2-6-70(B).

While the Agency uses the HALLEX to interpret the regulations and provide procedural guidance, the Sixth Circuit has held that the HALLEX is not binding on this Court. *Bowie v. Comm'r of Soc. Sec.,* 539 F.3d. 395, 399 (6th Cir. 2008). This Court has also recognized that the procedural guidance in the HALLEX is not binding and does not carry the force and effect of law or impose judicially enforceable duties on the courts. *Fraley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1358, 2019 WL 57799576, at *1 (S.D. Ohio Nov. 7, 2019), *citing Robberts v. Comm'r of Soc. Sec.*, No. 2:18-cv-541, 2019 WL 4023549, at *7 (S.D. Ohio Aug. 26, 2019) (HALLEX does not have the force of law or impose judicially enforceable duties on either the ALJ or the court); HALLEX I-1-01. Additionally, the Agency's procedures set forth in the HALLEX do not create federal due process rights for claimants. *See Smith v. Comm'r of Soc. Sec.*, 17-12056, 2018 WL 3750971, at *13 (E.D. Mich. 2018) ("But, no circuit has held that the HALLEX creates constitutional rights because, of course, only the Constitution, not an agency's rules or procedures, is the course of such rights.'"). Thus, the Commissioner contends that the ALJ's alleged failure to follow the HALLEX is not reversible error as the HALLEX rules are "not binding on this court." See *Bowie*, 539 F.3d at 399.

The Commissioner further notes that Plaintiff fails to show she was harmed from the ALJ's failure to follow HALLEX I-2-6-70(B). *Creech v. Comm'r of Soc. Sec.*, 581 F. App'x 519, 521 (6th Cir. 2014) ("District courts that have granted relief for failure to comply with HALLEX have required that the plaintiff demonstrate prejudice from the failure to follow the procedures."). Plaintiff fails to show her testimony included any information that

was not already sufficiently included in the medical records reviewed by Dr. Dhiman before he testified regarding Plaintiff's functional limitations. Dr. Dhiman testified that he reviewed Plaintiff's medical records and other records, which included sufficient information about her condition and symptoms (Tr. 40-41). *Lehman v. Saul.*, No. 2:18-cv-541, 2019 WL 4023549, at *7 (S.D. Ohio Aug. 26, 2019) ("Plaintiff has not shown that he suffered any prejudice by having the medical experts testify first because both experts testified that they had reviewed plaintiff's treatment records, which contained sufficient information about plaintiff's current medications and symptoms.").

Plaintiff claims that Dr. Dhiman could have drawn a more precise conclusion if he had heard her testimony. However, she fails to point to any evidence that was not available to Dr. Dhiman regarding her condition in his review of the record. Plaintiff points to her testimony of alleged vertigo; edema in her lower extremities; back pain that shoots into her lower extremities; shortness of breath and chest pain; pain in her knees, ankles, and feet; frequent urination; and that she relies on home oxygen during the day. (Doc. 12; citing Tr. 66, 71-78). However, such information relating to Plaintiff's physical issues were available in the records reviewed by medical expert Dr. Dhiman and the ALJ. Dr. Dhiman testified there was sufficient evidence to establish medically determinable impairments and the functional limitations from those conditions. (Tr. 41). Indeed, Dr. Dhiman expressly referenced Plaintiff's physical impairments and symptoms when explaining his opined limitations. Notably, Dr. Dhiman testified that because of Plaintiff's shortness of breath due to COPD and osteoarthritis he limited her to standing and walking for two hours out of an eight-hour workday and no more than thirty minutes at a time. (Tr. 46).

Additionally, as noted by the Commissioner, Plaintiff's attorney was clearly aware that the ALJ did not summarize Plaintiff's testimony before Dr. Dhiman testified, yet she agreed to proceed with the hearing, and she did not raise this issue during the hearing despite numerous opportunities to do so. Plaintiff's attorney stipulated to Dr. Dhiman's qualifications and did not object or request that the ALJ provide a summary of Plaintiff's testimony before Dr. Dhiman testified. (Tr. 40). Plaintiff's attorney was also given an opportunity to cross-examine Dr. Dhiman and again did not raise the issue of Plaintiff's testimony before cross-examining Dr. Dhiman. (Tr. 47). In this regard, Plaintiff's counsel asked Dr. Dhiman whether it would be "reasonable to expect, based on the medical evidence that you reviewed, that were would be additional absences or additional breaks required throughout the workday or workweek?" (Tr. 47). After Dr. Dhiman testified that Plaintiff would be absent from work one day per month and off-task 5 to 10% of the time, Plaintiff's attorney said "Your Honor, you asked the rest. That is all I have." (Tr. 47).

The ALJ then asked "Counselor anything else?" before allowing Dr. Dhiman to disconnect from the call. (Tr. 47). Plaintiff's attorney said "No." (Id.). Plaintiff and her representative had ample opportunity to object to the medical expert's testimony or request that the ALJ first provide a summary of Plaintiff's testimony if Plaintiff believed her testimony was required for the medical expert to make his opinion, but she did not raise the issue during the hearing.

In light of the foregoing, the undersigned finds that the ALJ did not err in failing to summarize Plaintiff's testimony for the medical expert.

9

*2. RFC Finding*

Plaintiff argues next that the ALJ erred in assessing her physical RFC because she did not adequately account for limitations from her alleged vertigo and edema. In this regard, Plaintiff contends that the record consistently documents Plaintiff's difficulties with standing and walking. Plaintiff notes that she has a long history of degenerative disc disease, back pain, muscle cramps, decreased range of motion, irregular gait, periods of dizziness/vertigo, shortness of breath and edema/swelling in her bilateral lower extremities. (Tr. 63, 73-75, 75, 518, 558, 566, 572, 592, 621, 626, 631, 646, 673, 744, 748, 1105, 1138, 1144, 1151, 1194, 1208, 1211, 1225, 1569, 1587, 1639).

As such, Plaintiff claims that she requires the ability to elevate her legs throughout the day, due to her leg swelling, requires the use of oxygen, and has periods of dizziness upon position change, the ALJ should have discussed the impact that these limitations would have on Plaintiff's ability to work. Thus, Plaintiff claims that the RFC did not accommodate her standing/walking limitations and did not discuss her alleged required need to elevate her legs throughout the day due to her leg swelling, required the use of oxygen, and her dizziness upon position changes.

As noted by the Commissioner, the ALJ's decision properly considered the evidence, including the evidence Plaintiff references, and reasonably concluded that the RFC finding for a restricted light-level work with a sit/stand option and several postural, environmental, and reaching limitations accounted for her physical condition. (Tr. 16-21). The ALJ considered the medical evidence, which indicated that Plaintiff's ability to perform work-related functions have been further limited by chronic lumbar pain and COPD. (Tr. 17). For example, the ALJ noted that physical examination findings in

10

September 2017 showed intact sensation, strength, and reflexes; and abnormal lordosis of the lumbar spine (Tr. 19, citing Exhibit B4F/13; see Tr. 599-600). In November 2017, Plaintiff showed normal gait, strength, sensation, and range of motion, and had no musculoskeletal problems, edema, aches, swelling, weakness, or neurological complaints. (Tr. 19, citing Exhibits B2F, B6F/5-6; see Tr. 564-69).

In February 2018, Plaintiff had antalgic gait, but otherwise unremarkable neurologic findings and largely normal musculoskeletal findings. (Tr. 19, Exhibit B4F/6; see Tr. 592). In July 2019, physical examinations showed Plaintiff had normal gait, station, strength, sensation, and negative single leg raise testing. (Tr. 19, citing Exhibit B6F/5; see Tr. 615). The ALJ also considered the evidence regarding Plaintiff's COPD and related symptoms. (Tr. 19). The ALJ noted that Plaintiff's symptoms of COPD had progressed during the relevant time period. (Tr. 19).

In November 2017, Plaintiff had normal respiratory effort, decreased breath sounds bilaterally, but no edema. (Tr. 19, citing Exhibit B2F; see Tr. 564-78). The ALJ noted treatment records in February 2018 showed Plaintiff had chronic COPD; she was told to stop smoking and stay on inhalers to control symptoms. (Tr. 19, citing Exhibit B4F/6; see Tr. 592). While Plaintiff had edema in her legs in July 2018, she reported doing okay regarding COPD, oxygen and a nebulizer with no increased difficulty breathing or sleeping. (Tr. 19, citing Exhibit B6F/21; see Tr. 631). Plaintiff's examination findings in April 2019 similarly revealed no wheezing, crackles, and good air movement (Tr. 19, citing Exhibit B4F/14; see Tr. 600).

In 2020, Plaintiff reported that she experienced more difficulty breathing and was using oxygen more; medical examiners advised her to stay on inhalers and try to stay in

11

the air conditioning. (Tr. 19). However, the ALJ noted that while Plaintiff alleged that she required oxygen, medical expert Dr. Dhiman did not testify that the use of oxygen was medically necessary or required. (Tr. 19). The ALJ also considered the minimal objective diagnostic imaging findings of Plaintiff's hips, lumbar spine, and left knee in assessing the RFC. (Tr. 19). The ALJ noted that despite Plaintiff's allegations of debilitating pain, objective imaging showed only minimal thinning of the hip joints, mild degenerative joint disease of the left knee, and mild degenerative disc disease of the lumbar spine with no acute findings (Tr. 19, citing Exhibits B1F, B6F/83, B7F; see Tr. 517, 693, 728-29, 734-35).

The ALJ also considered, *inter alia,* the opinion of the medical expert Dr. Dhiman and adopted several of his opined limitations, including limiting Plaintiff to light work, sitting six hours, standing/walking two hours, and several postural, reaching, and environmental restrictions. (Tr. 20-21).  In sum, the ALJ properly evaluated the record evidence, including evidence Plaintiff cites, indicated Plaintiff was restricted due to her impairments, and accordingly accommodated her impairments, including her low back pain and shortness of breath, in the RFC finding.

   *3. Step-two finding*

Plaintiff argues last that the ALJ erred in failing to find her dizziness and vertigo were severe impairments.   For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

Here, the ALJ found that Plaintiff had the following severe impairments: depression, somatoform disorder, hypertension, obesity, osteoarthritis, degenerative disc disease, and COPD. (Tr. 13). The ALJ also noted that Plaintiff had several non-severe impairments.  Notably, at step two the ALJ expressly discussed Plaintiff's alleged dizziness. (Tr. 13). The ALJ considered that Plaintiff's reported dizziness resulted in extensive cardiac testing, which had been unremarkable, and that examiners suggested that it was a symptom secondary to COPD and not to hypertension. (Tr. 13). The ALJ thus concluded that Plaintiff's dizziness was a symptom and not a medically determinable impairment. (Id.).

As noted by the Commissioner, Plaintiff fails to cite any record evidence showing "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" to establish a separate medically determinable of dizziness/vertigo. 20 C.F.R. § 404.1521. Plaintiff argues that the record supports finding a dizziness/vertigo medical determinable impairment and that it had more than minimal effect on her ability to work. However, the records Plaintiff cites do not show a separate dizziness impairment. (Id.).

Even assuming the record contains a diagnosis of dizziness/vertigo, it is well-settled that a mere diagnosis does not indicate the severity of an impairment, nor does it prove disability. *Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). The ALJ reasonably determined that a diagnosis without supporting objective signs did not constitute an impairment resulting in more than minimal work-related limitations. (Tr. 49, 50). See C.F.R. §

13

404.1521 ("Your impairment(s) must result from…psychological abnormalities that can be shown by medically acceptable clinical…techniques").

As noted by the Commissioner, it is Plaintiff's burden to produce "sufficient evidence to show the existence of a disability." *Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 425 (6th Cir. 2013); see also C.F.R. § 404.1512(a). If she possessed advantageous evidence (e.g., treatment notes with a psychiatric provider or a medical opinion supporting greater limitations than those found by the ALJ) from the relevant period she should have submitted such. The ALJ found sufficient information in the record to render a determination, she had no obligation to seek additional evidence. *Wilson v. Comm'r of Soc. Sec. Admin*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (There is no special duty on the ALJ to develop the record when claimant is represented, capable of presenting an effective case, and familiar with hearing procedures).

Here, the ALJ properly found that there is no evidence that any of Plaintiff's non-severe impairments imposed more than minimal functional limitations on the Plaintiff's ability to perform work related activity. At step two, Plaintiff bears the burden of showing her alleged impairments affect her more than minimally and, in light of this evidence, it was reasonable for the ALJ to find she was unable to do so. *See Watters v. Comm'r of Soc. Sec.*, 2013 WL 3722099 at *2 (6th Cir. July 17, 2013) ("Although the standard is de minimis, the plaintiff still bears the burden of demonstrating that he suffers from a medically determinable . . . impairment."). In short, the ALJ found that Plaintiff had at least one severe impairment and then properly proceeded to the third step of the evaluation process. (Tr. 13). In other words, "[b]ecause the ALJ found that [Plaintiff] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any

14

other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); see also *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (where the ALJ found that claimant had a severe impairment, "[t]he fact that some of [claimant's] impairments were not deemed to be severe at step two is [] legally irrelevant.").

Accordingly, the undersigned finds that substantial evidence supports the ALJ's step two finding. See *Longworth v. Comm'r of Soc. Sec*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

The ALJ's findings in this case were well within the zone of reasonable choices. See *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); accord *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."). Substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**, and that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge